LEO TEGETHOFF, Respondent, v. FINNETTE TEGETHOFF, Appellant.

St. Louis Court of Appeals. Argued and Submitted November 8, 1917. Opinion Filed December 4, 1917.

1. **DIVORCE: Appellate Practice: Desertion: Sufficiency of Evidence.** The appellate court, in passing upon a divorce case determines the case from the whole record, and while great deference is paid to the finding of the trial judge when sitting in such a case, his finding is not conclusive, and when the evidence shows that the plaintiff left the home, and that a separation agreement was made between the parties, the finding of the trial judge that defendant deserted plaintiff was erroneous.

2. ———: **Grounds: Indignities.** The alleged indignities *held* not sufficient to afford a statutory ground for divorce.

3. ———: ———: **Evidence: Sufficiency.** In a divorce action, the judge's finding that plaintiff husband was unaware of his wife's pregnancy at the date of marriage within Rev. St. 1909, section 2370, enumerating grounds for divorce, *held* not sustained by the husband's testimony in the face of evidence indicating that he was responsible for defendant's pregnancy.

Appeal from the Circuit Court of St. Louis County.— *Hon. Gustavus A. Wurdeman,* Judge.

REVERSED AND REMANDED (*with directions.*)

*Sam'l B. McPheeters, Fidelio C. Sharp,* and *Henry H. Oberschelp* for appellant.

(1) Plaintiff was not entitled to divorce on the allegation that at the time of the solemnization of her marriage, defendant was pregnant by another man than

plaintiff unknown to him. (a) "Neither in old nor in modern times has it ever been allowed just to hold a child a bastard unless there is no judicial escape from that dire conclusion." Nelson v. Jones, 245 Mo. 579-594. (b) Presumption of legitimacy is strongest known to the law, and may be rebutted only by proof that the husband could not have been the father, as that he was impotent or could not have had access. 7 C. J. 945. (c) The declarations of a husband that a child born in wedlock is not his are not sufficient to prove its illegitimacy, even though it be born only three months after the marriage, and a separation between wife and himself take place soon thereafter. 3 R. C. L. 730. (d) Such issue will be held to be legitimate unless it be conclusively shown that a person other than the husband must necessarily and unavoidable have been the father. This doctrine applies *a fortiori* to cases of procreation before the marriage. Bowles v. Bingham, 5 Am. Dec. 497, 500, cited in 3 R. C. L. 730. (e) Evidence of a husband or wife as to access or non-access is excluded wherever the issue of legitimacy is involved, although the child was conceived before marriage. 3 R. C. L. 733. (f) The law is not willing that a child shall be declared a bastard to suit the whims or purposes of either parent nor upon evidence merely that no actual act of intercourse occurred between husband and wife at or about the time the wife became pregnant. The proof must be such as to show the impossibility of access. Powell v. State of Ohio, ex. rel. Fowler, 84 Oh. St. 165. (g) On grounds of public policy, affecting the children born during the marriage, as well as the parties themselves, the presumption of legitimacy as to children born in lawful wedlock cannot be rebutted by the testimony of the husband or the wife to the effect that sexual intercourse has or has not taken place between them. The rule not only excludes direct testimony concerning such intercourse but all testimony of such husband or wife which has a tendency to prove or disprove legitimacy. Jones Evidence (2 Ed.), sec. 97 (96). (h) Where pregnancy of the wife by another man unknown to the husband at the time of marriage

entitled him to an annullment thereof, yet any want of due caution on his part, or any consent by him to the marriage after being aware of the facts rendered it indissoluble. 1 Bishop on Marriage, Separation & Divorce, sec. 484. (2) Plaintiff is not entitled to divorce on any of the alleged indignities which he claims rendered his condition intolerable. (a) There is no substantial or convincing evidence of alleged indignities such as to render his condition intolerable under the law. (b) Besides his falsely denying that he is the father of her baby and his baby precludes him from a divorce on ground of indignities. Clinton v. Clinton, 60 Mo. App. 296-299; Miles v. Miles, 137 Mo. App. 38 (3) Plaintiff is not entitled to divorce on allegation defendant absented herself from plaintiff without a reasonable cause for the space of one whole year and more. (a) His right to determine who shall reside in the house must be reasonably exercised. 9 R. C. L. 366. (b) There was no absence of consent by him to the separation and its continuance. There was no desertion if, at any time he acquiesced in the separation. The separation agreement of October, 1914, was in itself a bar to divorce on ground of desertion. Clark v. Clark, 143 Mo. App. 350, Syl. 2, 355; Rogers v. Rogers, 84 Mo. App. 197; Davis v. Davis 60, Mo. App. 545, l. c. 554-555. (c) The separation or alleged desertion and its continuance would have had to be without reasonable cause. Davis v. Davis, 60 Mo. App. 545, 556. (4) (a) The grounds of desertion and indignities are inconsistent, self-contradictory and destroy each other. He would be entitled to a divorce on ground of indignities only when they rendered his condition intolerable, which means that by reason thereof he could not and would not live with her, in which case he cannot claim desertion. By claiming desertion he admits he can, live with her and wants to live with her, but that she refuses, in which case he certainly cannot say she rendered his condition intolerable. If she subjected him to such indiginities as to render his condition intolerable, he cannot claim

he still wanted to live with her which is necessary for desertion. If he still wanted to live with her (necessary for desertion claim) then the indiginities, if any, did not render his condition intolerable. (b) Likewise claims for divorce on the ground of pregnancy by another man and on the ground of desertion are inconsistent, self-contradictory and destroy each other. If he wanted to live with her (necessary for desertion claim) then he · cannot · claim the first alleged ground. If he claims the first alleged ground then he does not want to live with her and cannot claim desertion.

*Roy Schooley* and *John E. Mooney,* for respondent.

(1) Plaintiff is·clearly entitled to a divorce on the allegation that at the time of the solemnization of the marriage, defendant was pregnant by another man than plaintiff unknown to him. (a) Appellant failed to take exception to respondent's testimony in the trial court that he had. had no intercourse with appellant before the marriage and that he was not the father of her child and such exception cannot be raised here for the first time. No exceptions shall be taken in ·an appeal or writ of error to any proceedings in the circuit court, except such as shall have been expressly decided by such court. R. S. of Mo. 1909, sec. 2081. (b) A question not passed upon by the lower court at the trial cannot afterwards be injected into the cause by motion for new trial in the lower court, or by assignment or brief in the appellate court. Hall v. Wabash, St. L. & P. Ry. Co., 97 Mo. 68; St. Louis v. Brewing Co., 96 Mo. 677; St. Louis v. Seeferer, 111 Mo. 662; Ward v. Board, 135 Mo. 309; Phillips v. Jones, 176 Mo. 328. (c) If respondent did condone the appellant's offense of being pregnant at time of marriage by another man unknown to respondent, her subsequent desertion of him revived the offense. An offense which has been condoned may be revived not only by a repetition of the same offense but also by the subsequent commission of other martial offenses. 14 Cyc. Page 643;

Twyman v. Twyman, 27 Mo. 383; Moore v. Moore, 41 Mo. App. 176; Welch v. Welch, 50 Mo. App. 395; Viertel v. Viertel, 123 Mo. App. 63; Dimmmitt v. Dimmitt, 167 Mo. App. 94; Herriford v. Herriford, 169 Mo. App. 641; Meek v. Meek, 186 Mo. App. 703; Kennedy v. Kennedy, 182 S. W. 100. (d) In a divorce case it is the province of the appellate court to examine the entire evidence; at the same time deference should be paid to the judgment of the trial court, and it should be made clearly to appear that manifest error has been committed in the conclusion reached, before the judgment will be reversed. King v. King, 42 Mo. App. 454; Nichlos v. Nichlos, 39 Mo. App. 291; Clark v. Clark, 143 Mo. App. 350; Cox v. Cox, 113 Mo. App. 78. (e) Even if the findings contained in the judgment of themselves would not authorize a divorce, which is by no means admitted, yet there was no error in the judgment if, upon the pleadings and all the evidence in the case, he was entitled to a divorce. Bobb v. Letcher, 30 Mo. App. 43; Griffith v. K. C. M. & C. Co., 46 Mo. App. 544; Jordan v. Buschmeyer, 97 Mo. 94; Reese v. Cook, 17 Mo. App. 517; Kurlbaum v. Roeplse, 27 Mo. 161. (f) The judgment is supported by all the believable evidence in the case and is for the right party. When a witness has intentionally sworn falsely to any material fact in issue, the trier of the facts may disregard any or all of such witnesses testimony. State v. Mix, 15 Mo. 153; State v. Orr, 64 Mo. 339; White v. Maxcy, 64 Mo. 552; Cameron v. Hart, 57 Mo. App. 142; Britton v. City of St. L., 120 Mo. 437; McFadin v. Catron, 120 Mo. 252. (2) Respondent entitled to divorce on grounds of alleged indignities. Her charges of indignities against him not sufficient to amonut to recrimination. (a) The fact that a husband has charged his wife with infidelity is not sufficient to authorize a divorce. Mere indignities by a husband to the moral character or reputation of his wife are not sufficient to authorize a

divorce. Cheathham v. Cheathman, 10 Mo. 296; Bethel v. Bethel, 181 Mo. App. 601. (b) A wife quarreling with and abusing her husband before others amounts to indignities such as would be cause for divorce. Clark v. Clark, 143 Mo. App. 350; (c) Where one shows himself legally entitled to a divorce it is the trial court's duty to grant it, and he has no. discretion to refuse it. Miles v. Miles, 137 Mo. App. 38; Meyer v. Meyer, 158 Mo. App. 299; Wald v. Wald, 119 Mo. App. 341; Allfree v. Allfree, 175 Mo. App. 344. (d) A wife's conduct in seeking to have a public officer compel her husband give her a part of his salary each month, held ground for divorce. McGee v. McGee, 161 Mo. App. 40. (3) Respondent entitled to a divorce on the grounds of desertion (a) Though a wife, who believing that a crippled son of her's by a former marriage required her constant care and attention, against her husband's wishes accompanied the son at the time he left the husband's home, and remained absent for a year, the husband was entitled to a divorce on the ground of desertion. Kaster v. Kaster, 43 Mo. App. 115. (b) A wife's refusal to accompany her husband to a new home of his choice, within the same country, amounts to a desertion on her part. Schuman v. Schuman, 93 Mo. App. 99; Collett v. Collett, 170 Mo. App. 590. (c) The agreement of October, 1914, was not an agreement to live separate. But was merely a disposition of property interests, and no bar to a suit for divorce. Clark v. Clark, 143 Mo. App. 350; 1 Bishop on Marriage and Divorce, sec. 445; Lemmert v. Lemmert, 103 Mo. 57; Stokes v. Stokes, 1 Mo. 320; Rapp v. Rapp, 162 Mo. App. 673. (4) Letters written by husband to wife are confidential communications and as such not admissible. Berlin v. Berlin, 52 Mo. 151; Dwyer v. Dwyer, 2 Mo. App. 17; Carroll v. Carroll, 68 Mo. App. 190; Miller v. Miller, 14 Mo. App. 418; Ayers v. Ayers, 28 Mo. App. 97; Brown v. Brown, 53 Mo. App. 453; State v. Bell, 111 S. W. 24; Knapp v. Knapp, 183 S. W. 576.

REYNOLDS, P. J.—Action for divorce by husband, in which a decree was entered in his favor. From this the wife has appealed.

In the original petition, which was filed on August 31, 1916, plaintiff alleged the marriage as of July 23, 1914, and founded his right to a divorce solely upon the charge of desertion, alleging that the wife had absented herself, without a reasonable cause, for the space of one year next before the filing of the petition. Proper jurisdictional averments as to the residence of the parties were made.

It appears that on November 25, 1916, and at the return term, that is, the October, 1916, term of court, defendant filed a motion for alimony *pendente lite* and for an allowance for the support of the child alleged to have been born to the parties since the marriage, which motion was heard by the court on December 2, 1916. We are not advised of the action of the court on this motion, although the proceedings under it, that is the evidence heard on it, appear in the bill of exceptions. On December 6, 1916, and during the September term of the court, plaintiff filed an amended petition in which it is set out that the parties were married in the city of St. Louis on July 23, 1914, and that they had continued to live together as husband and wife from and after that date until the first day of September, 1914. With the usual averments of plaintiff's good conduct as a husband during the period, it is averred that defendant, in disregard of her duties as the wife of plaintiff, had absented herself from plaintiff without a reasonable cause for the space of one whole year of more next proceding the filing of the original petition and of the amended petition.

As another ground for divorce it is set out "that at the time of the solemnization of the marriage aforesaid, the defendant was pregnant by another man than the plaintiff and at the time of the solemnization of the marriage the plaintiff had no knowledge of said pregnancy."

As a third ground for divorce it is alleged that defendant had offered such indignities to plaintiff as to render his condition intolerable. We do not think it necessary to here set out the indignities charged but will refer to them hereafter.

This amended petition contained the necessary jurisdictional averments as to residence. To this defendant, by way of answer, filed a general denial.

It will serve no useful purpose to set out the evidence in detail which was introduced by the respective parties at the hearing of this case, and we summarize it.

It appears that at the time the motion for alimony *pendente lite* was being heard, there was then living a child, which had been born to defendant December 8, 1914. At that hearing the wife testified that she and the plaintiff had been married by a justice of the peace on March 31, 1914. A certificate of such mariage, signed by the justice, was in evidence, in which it is set out that the parties had been married by him on that date. No license had been issued prior to the date of the alleged marriage, nor was the certificate recorded. The defendant, under cross-examination, and at the hearing of her motion for alimony, testified very positively that she and plaintiff had been married on that date at Clayton by the justice of the peace who issued the certificate, undertaking to describe the justice and the place in the court house at Clayton where she testified the ceremony had been performed. Plaintiff, at the hearing of that motion, had testified that he and defendant were not married until July 23, 1914. The defendant admitted that there had been a marriage on July 23rd, because her mother had insisted that they should be married by a priest and in church.

It appears that a license was duly issued for this marriage and it was solemnized by a priest.

The justice of the peace who had given this certificate, called as a witness by plaintiff in this present action, testified that he had never performed any marriage ceremony between plaintiff and defendant and

that in point of fact he had never seen the plaintiff until he saw her in court when testifying in this case; that in the last of July or first of August, 1914, plaintiff came into his office, as he had been in the habit of doing almost daily, and always before then smiling. The justice asked him what was the matter (evidently meaning that plaintiff did not then look happy), and plaintiff said, "I don't know." Then the justice said, "You ought to be a happy man now that you are a married man," and plaintiff said, "I am, in a way." Plaintiff then went out of the justice's office but came back a few hours later and asked the justice if he would do him a favor. As they had "always been the best of friends," said the justice, he told plaintiff that if there was anything he could do for him he would, whereupon plaintiff said, "My wife is in the family way and it is not my fault but I am afraid of her father and I am afraid of her brothers and I am afraid of my mother-in-law," and the justice asked him why he was afraid, to which plaintiff said, "Why they know she is in that condtion." Counsel for defendant objected to all this but said he would let it in if the court wanted to hear it but he afterwards moved that it be stricken out, whereupon the court ruled that "the last answer will be stricken out." The record is in such shape that it is impossible to say what was stricken out, so we give all of it.

Plaintiff's version of obtaining the false certificate from the justice is, that he had obtained it because defendant and her mother had begged him to save the girl's character and to get this certificate, and that he did not know that his wife was pregnant until the doctor told him of it on this visit which, as stated, occured two or three days after the marriage in July. Plaintiff and his wife and her mother went to see this doctor and the doctor said to them, "Do you know the condition of this woman," to which plaintiff said he did not. The doctor asked him how long he had been married and he said, "Just a very short time," and the doctor then told him that his wife was pregnant and had been so for

some four and a half months and "had a very severe discharge". According to plaintiff, after they went home, he asked his wife who had caused her to be in that condition, and she began to cry and gave him no answer at all but said " 'You can protect me, you are the only one, you can,' and then asked me to get a phony marriage license." This is denied by the wife.

At the trial of this action for divorce, and after the justice had testified as above, the defendant admitted that she had sworn falsely on the previous occasion, but stated that she had done so at the instigation of her husband who had brought the certificate purporting to show a marriage on March 31, 1914 by the justice, and after it was known that she was pregnant, to show to her friends and to show to her father that he (plaintiff) had married her at that time, because otherwise her father would kill him; that her father and brother could have him prosecuted; that her husband brought this certificate to her and told her that she should stand by it and should always say to her father and mother that they had been married in March and if she told it different her brother and father could handle him very severely. Defendant testified that in point of fact they had not been married until July 23, 1914, when they were married in church. According to defendant's testimony, her husband knew of her condition before they were married; that she told him there was "something the matter with her." After they were married, she still complaining of being sick, at the instigation of her husband, she, with her husband, went to see a physician selected by the husband, about July 29, 1917. The physician, after examining her, told her husband and defendant's mother, who appears to have been with them, that she was pregnant, but otherwise in no more serious condition than a woman would be under such circumstances, although she had a slight discharge, but nothing unusual. The plaintiff further testified that after the visit to the physician, and under that physician's advice, although they were living together, he had had no connection

with his wife for sometime after this marriage in July. They lived together after this marriage at a home provided and then owned by the husband until September 21, 1914, when plaintiff testifies defendant deserted him. But as we understand the testimony, plaintiff himself left the home and from that time on the parties have lived separate. Plaintiff assigned as the principal reasons for leaving home, as he testified, the fact that his wife insisted on having her father and mother and two brothers live with them in his house, to which, after the marriage, he had himself removed them, and that while they were together his wife had applied abusive epithets to him, had pouted because he objected to her father and mother and brothers living with them, had refused to remove from that place to another residence that he was willing to provide, where they could live alone, and had complained of his not making pecuniary provision for her and had insisted that he apply moneys of his father, which were in his hands from collections made for his father, and had practically turned him out of the house, which was his own property at the time and which he allowed the father and mother and brothers the use of rent free, he paying $7 a week for board. These are, in the main, the indignities relied upon by the husband.

As proof of desertion, it was in evidence that after the husband left the home he wrote two letters to his wife, one of date September 14th, the other of date September 18, 1914, in the former of which he expressed his sorrow for the misunderstanding between them and his regret that both had such bad tempers that they could not agree with anyone, and stating that he had a nice small house lined up and that if his wife would agree to come and live with him as a loving husband and she as a loving wife they could get along nicely and no one would know anything about their troubles; that he was sorry they had both gone so far as to consider being married and to live together until death but that his wife knew that it was as hard on him as it was on her and that if they could get together in a way, they ought to; that if his

wife could see the matter in the way he did, and if they were alone, they could save some money and she could be able to get what ever was needed, but in the present condition, he was broke, adding that he hoped she would consider the matter deeply and do what she thought best for herself because he would take the best care of her, as she knew that her folks could not be with her all her life. The letter of September 18th was along similar lines. The wife does not appear to have answered either letter. Her neglect to do so or to resume habitation with her husband is the foundation for the charge of desertion, which, at this trial, plaintiff testifies occured about September 21, 1914.

As against this, it appears that on October 5, 1914, the day that defendant became seventeen years of age, she, with her husband, signed an agreement, which was acknowledged October 7, 1914. Defendant testified that she had been asked to sign this two weeks before but when it was found that she was not then of age this paper had been brought back on October 5th, the day that she become of age, on which day she signed it.

This agreement sets out that "whereas the said parties (that is plaintiff and defendant) have separated and feel satisfied that they cannot live together as husband and wife and with a view to settle their property rights and for the purpose of providing for the support and maintenance of the said Finnette Tegethoff, the said Leo Tegethoff has this day joined in the conveyance of their real estate which is owned and held jointly by them, for the purpose of her support and maintenance, that the said Finnette is to have and to hold said real estate and to dispose of same as she sees fit, that in consideration of the conveyance of the said real estate by the said Leo Tegethoff the said Finnette Tegethoff agrees to release Leo Tegethoff from any further support and maintenance of herself and heirs born of their marriage." Both parties signed and acknowledged this.

It should be said that the two letters above referred to, of date September 14th and September 18, 1914, when offered by defendant's counsel, were objected to

by counsel for plaintiff, on the ground that they were privileged communications, but it further appears that afterwards and apparently by consent, the letters were admitted and read in evidence.

It seems, although this is not very clear, that this agreement above set out, acknowledged October 7, 1914, was entered into about the time that the wife was proposing to have her husband prosecuted for abandonment and failure to support herself and child, and on the signing of this agreement that proceeding was abandoned. It is in evidence that this property conveyed was supposed to be worth $5200 but was subject to a deed of trust for $2600 and the property was subsequently sold out under it, and the wife testified that she had received for her equity in it, after the payment of costs, taxes, etc., $400.

The plaintiff testified very positively that he had had no improper relations with his wife prior to the marriage and even for some time after the marriage, and in consequence of the advice which the doctor gave him in July, 1914, had had no conjugal relations with her for sometime thereafter. On her part, however, the wife testified very positively and in some detail as to having allowed plaintiff to have intercourse with her, first, in March, 1914, and two or three times afterwards in her own home, she testifying that she had yielded to the solicitations and force of the plaintiff and that these occurrences took place after they had become engaged. It was in evidence that the parties had become acquainted with each other, the defendant then about sixteen years of age and the plaintiff about twenty-four, at a social party in December, 1913, and that palintiff had been very assiduous in his attentions. According to the testimony of defendant and of her mother and of acquaintances, it does not appear that defendant associated with any other man or men, beyond the fact of meeting them at parties and dances and one or two occasions being accompanied home by young men whom she met on these occasions. The testimony tends very strong to show that plaintiff was the only male escort or visitor that the defendant had

from the time they became acquainted until they were married. There is not a particle of testimony in the case even tending to show that during that period defendant was in receipt of the attention of any other man, and no pretense that any man other than plaintiff was in the habit of visiting her at her home. They were recognized as sweethearts by all of their friends. Plaintiff produced no evidence to the contrary. It is true that a couple of photographs appear to have been introduced by plaintiff in which defendant and others were shown in groups. They are not before us but defendant explained that these were group pictures taken when she and others were at dances or parties. That they placed defendant in a compromising or unladylike attitude, is not pretended.

It is further to be said that while defendant testified that after the marriage and until the separation, plaintiff was in the habit of indulging in drink to excess every Sunday, at all other times he appears to have been a sober and well conducted young man, in fact many witnesses testified to his good character. The mother of the defendant, testifying that she discovered after the marriage that plaintiff was addicted to the excessive use of drugs, testified that she was a police matron and had experience with people who were addicted to the drug habit and that she had no hesitation in saying that plaintiff was not a drunkard but a cocaine fiend. In this, however, she is not corroborated by any other witness. It is further to be said that the testimony of all the witnesses called, and there were a number in behalf of defendant, testified to her fine character and her exemplary conduct as a woman and as a wife.

The plaintiff on his part denied any illicit intercourse with defendant prior to the marriage and denied that he was aware of her condition until informed of it by the physician. On her part defendant testified in the most positive manner that she had never had any improper relations with any man except with plaintiff, and admitted illicit intercourse with him after they became engaged and before their marriage, and testified that plaintiff was aware of her condition when he married her.

This is rather a meager, but we think sufficient statement of the salient facts in the case.

The learned trial judge, as appears from the record, granted the decree to plaintiff because of the false testimony given by the wife at the hearing of the motion for suit money, and hence he rejected all of her testimony, and rejected all the testimony of defendant's mother and that of a younger brother of defendant as to events which the latter said had occurred when he (the brother) was seven years old, he testifying to them two years afterwards. In brief, the learned trial judge accepted the testimony of plaintiff in the case and rejected all of that given by defendant and her mother and brother and granted the decree.

We have said, as has our Supreme Court, in a multitude of cases, that great deference is to be paid to the finding of the trial judge when sitting in a case of this kind, that judge having the advantage of seeing and hearing the witnesses who testified; but with all that, our system of practice, while it permits us to have before us only the testimony as taken down and reported and brought before us, does not absolve us from the duty of examining and weighing that testimony and arriving at our own conclusion upon it. We have read all the testimony in this rather disagreeable case with great care, and while making all allowance possible in favor of the superior opportunities of the trial judge, are compelled to hold that his finding is erroneous.

Taking up the charge of desertion, the evidence persuades us that desertion, if we may so call it, that is severing of relations between husband and wife, was by the act of the husband himself. It is true that two or three days after he had left the home he wrote the letters referred to, asking his wife to return to him and offering to provide her a home. Ordinarily it became the duty of the wife to follow the husband and to become reconciled to him and resume conjugal relations thereafter. The wife undoubtedly failed in this, but after that, as appears by the agreement, which is in evidence and which we use for the sole purpose of pass-

ing on this point, and without in any manner whatever passing on the validity in law of that agreement, use it as furnishing evidence that the separation between the parties was by mutual consent, and that this occurred after the letters written by the husband to the wife. So we do not think that on the alleged ground of desertion this act is maintainable.

The so-called indignities, in our judgment, are not sufficient to afford a statutory ground for divorce.

There remains for consideration the most serious charge in the amended petition.

Our statute, section 2370, Revised Statutes 1909, in enumerating the causes upon which a divorce may be granted, provides as one of the causes, "Where the intended wife, at the time of contracting marriage, or at the time of the solemnization thereof, shall have been pregnant by any other man than her intended husband, and without his knowledge at the time of such solemnization." It is very remarkable that if the husband, plaintiff here, was honestly of the belief that he was not the father of the child born after the marriage between himself and defendant, that when he filed his original petition in this case he based it solely on the ground of desertion. He filed that petition on August 31, 1916, and yet, according to his own testimony, he knew in July, 1914, of the unchastity of his wife. In his testimony as to all that took place between them afterwards, and taking his own version of the matter, and particularly having in mind the two letters written by him in September, 1914, it is very significant that he in no manner whatever refers to the premarital misconduct of his wife. Taking his own version of what occurred when the doctor informed the parties not only of the pregnancy of his wife, but of the fact that that appeared to have been her condition going on four and a half or five months, we find no expression of indignation, sorrow, or reproach. He does testify that he endeavored to have his wife confess to him who was the author of her condition, and he says that when he did that she cried, and that when she asked him to

obtain the certificate from the justice as a matter of honesty and fairness to her, that she told him he owed it to her. To the contrary, when his mother-in-law first learned of her daughter's condition from the physician, about the 29th of July, 1914, the plaintiff, a few days afterwards, went to his friend, the justice, to procure a predated marriage certificate, as he then told the justice, because he was afraid of his wife's father, and of her brothers, and of his mother-in-law, because they knew his wife was pregnant. Nor was it until the filing of the amended petition in this case on December 6, 1916, two years and seven months and about eight days, according to his own testimony, after he learned of his wife's pregnancy, that he put on record any complaint of this matter. Nor does it appear that when he applied to his friend, the justice of the peace, for an antedated marriage certificate, that he made the slightest complaint or reflection on his wife, beyond saying that "it was not his fault." What was not his fault, is not clear. He further gave as a reason for wanting that certificate his desire to cover his wife's shame and protect his own good name. In short, in the face of the positive testimony of the defendant as to her intercourse with the plaintiff, and in the absence of the slightest probative testimony that in any way pretends to show her association with any other man, and in the light of the conduct of the plaintiff himself, we cannot, on this record, believe that within the terms of our statute, section 2370, supra, at the time of the contracting of the marriage and at the time of the solemnization thereof, the plaintiff here was without knowledge of the act and consequent condition of his wife.

From a very careful consideration of all the testimony in this case, our conviction is that the plaintiff here is not entitled to the decree on any of the grounds alleged.

The judgment of the circuit court is reversed and the cause remanded, with directions to that court to dismiss plaintiff's action. , *Allen* and *Becker, JJ.,* concur.