No. 9089
Orleans Appeal

---

ALBERT L. LANAUZE v. A. BALDWIN & CO., LTD., AND JOHN K. EDWARDS, In Solido, Appellants

---

(June 8, 1925, Opinion and Decree.)

---

(*Syllabus by the Court.*)

1. **Louisiana Digest—Master and Servant—Par. 166.**
A servant has no implied power to employ a substitute to do his master's work, and when a substitute employed by a servant without authority is guilty of negligence, the master is not responsible.

2. **Louisiana Digest—Master and Servant—Par. 166.**
Where a city drummer, whose business requires him to drive an automobile belonging to his employer, permits another person to drive his car and an accident happens while the car is being so driven, the employer and owner of the car is not responsible, it appearing that the City drummer had no authority to employ or permit a substitute to drive the car and there existed no custom to that effect and no emergency.

Appeal from the Civil District Court, Parish of Orleans, Division "C", Hon. E. K. Skinner, Presiding.

This is a suit for physical injuries. Judgment for plaintiff. Defendants appealed.

Judgment amended and affirmed.

P. L. Fourchy, attorney for plaintff, and appellee.

Lemle, Moreno & Lemle, John May, attorneys for defendants, and appellants.

WESTERFIED, J. This is a suit for physical injuries. Plaintiff alleges that on July 14th, 1922, at about 11 o'clock a. m. he was walking across Canal street, at the intersection of Carondelet, within the traffic lines and in conformity with traffic regulations, when he was run into by a Ford automobile belonging to A. Baldwin & Co., in charge of Baldwin & Company's agent, one A. J. Buddendorf, but being driven by John K. Edwards, with Buddendorf's approval and consent, that the driver of the automobile was grossly negligent in that traffic signals were disregarded and the automobile carelessly and negligently driven at excessive speed, that as a result of his being struck by the automobile, his skull was fractured, rendering him unconscious; that he was conveyed to the Charity Hospital where he remained about six weeks; that he still suffers great physical and mental pain and is permanently disabled. He fixes his damages at $50,000.00 and sues A. Baldwin & Company and John K. Edwards, *in solido*.

The District Court awarded plaintiff judgment as prayed for in the sum of $3,000.00 and both defendants have appealed.

The defendant A. Baldwin & Company avers that in no event can it be held liable for the reason that at the time of the accident, the automobile, though owned by it, was not being driven by its agent or employee.

The defendant John K. Edwards, denies plaintiff's right to recover upon the ground that he was guilty of contributory negligence but insists that if he (Edwards) is liable, his co-defendant, A. Baldwin & Co., is also liable for the reason that though the car at the time of the accident was not being driven by Baldwin's agent, it was at that time being operated in Baldwin's interest and upon Baldwin's business and was driven by Edwards with the consent of Buddendorf, Baldwin's agent, and employee who was in the car at the time and seated besides Edwards, who was driving.

The first question to be considered is whether plaintiff is entitled to recover from either or both of the defendants.

This question presents little difficulty and is not very seriously contested. The evidence indicates that the Ford car was carelessly and negligently operated in that it either ran against traffic signals or started prematurely.

It was operated at excessive speed along the busiest thoroughfare in the City at the point where traffic was most congested and during one of the busiest hours of the day. Plaintiff was where he had a right to be and whether proceeding toward downtown as two witnesses say, or coming towards uptown as he and other witnesses say, he was within traffic lines as established by police regulations and crossing the street at a time when traffic coming and going in either direction was open. We fail to see in what respect he was negligent.

What we have said concerning plaintiff's right to recover disposes of the question of the liability of the defendant, Edwards, who, as the driver of the automobile, is of course, liable if anybody is.

As to the liability of the defendant, Baldwin & Company, it is not so easily disposed of.

Buddendorf was Baldwin & Company's City salesman and in furtherance of his duties he called upon Edwards, who was the President of the Edwards Motor Co., one of the Ford dealers in this City, for the purpose of interesting Edwards in the purchase of a type of Ford body sold by Baldwin & Co. Buddendorf suggested that Edwards come with him to Baldwin's Warehouse where the Ford bodies could be seen and at the same time intimated that Baldwin & Co., might be interested in trading in the Ford car which Buddendorf was driving for a new one. Edwards got in the car with Buddendorf and took the wheel. He testified that one purpose he had in mind in taking the wheel. was to test the condition of the Baldwin car as a prospective trade in, but that it was not necessary to drive more than a few blocks for this purpose and the accident happened many blocks away from Edward's place of business, where he first took the wheel. It might well be doubted whether Edwards was driving upon his own or, as a volunteer, on Baldwin's business at the time of the accident, but in view of admissions in the record on the part of defendant's witnesses to the effect that the car was at the time of the accident being driven in Baldwin's interest we will consider the case in that aspect.

The question, therefore, is whether an owner of an automobile can be held liable for the negligence of one, not in its employ, driving its car with the knowledge, consent and in the presence of its agent and upon the business of the owner. Stated another way—Can an employee whose business it is to drive his employer's car delegate his duty to another so as to render his employer liable for the other's negligence?

The following articles of the Code are of interest here:

Art. 2316. "Every person is responsible for the damage he occasions, not merely by his act, but by his negligence, his imprudence, or his want of skill."

Art. 2317. "We are responsible not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."

Art. 2320. "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."

Upon the principle respondeat superior as expressed by the maxim qui fecit per alim fecit per se the master is responsible for the acts of his servant "in the exercise of the functions in which they are employed".

Was Buddendorf's act in permitting Edwards to drive the automobile an exercise

of the function in which he was employed? Buddendorf was a city salesman and it was necessary, or expedient, for him in the discharge of his duties to drive the car provided by Baldwin from place to place as the interest of his employer's business suggested, but, as it seems to us, it is clear that in the absence of special authority given by his employer to permit others to drive his car or actual or presumptive knowledge of a custom of doing so, Buddendorf exceeded his authority and acted without the scope of his employer's business in turning the driving wheel over to Edwards. An employer, reposing confidence in an individual, might be willing to entrust the performance of certain duties connected with its business to that individual because of his having met certain standards set by the employer or for some other reason satisfactory to the employer, but it by no means follows that such employer would entrust its business and assume responsibility for one unknown to it and concerning whose ability it is not advised whether approved of by its employee or not. An agent owes his principal the duty of personally discharging his trust.

"Delegates non potest delegari. The selection of an agent in any particular case is made, as a rule, because he is supposed by his principal to have some fitness for the performance of the duties to be undertaken. In certain cases his selection is owing to the fact that he is considered to be especially and particularly fit. The undertaking demands judgment and discretion, which he is supposed to possess; or it requires the skill and learning of an expert, which he assumed to be; or personal force and influence are desirable, and these the agent is thought to be able to exercise, or honesty or even financial responsibility is relied upon, and this the agent selected is supposed to possess. Here is the delectus persona, and it is obvious that unless the principal has expressly or impliedly consented to the employment of a substitute, the agent owes to the principal the duty of a personal discharge of the trust."

"Hence it is the general rule of the law that in the absence of any authority, either express or implied, to employ a sub-agent, the trust committed to the agent is presumed to be exclusively personal and cannot be delegated by him to another so as to affect the rights of the principal. Putting it into more specific form, an agent generally has no implied authority either to put a substitute in his place or to employ assistants on his principal's account."

"The principal may, of course, expressly authorize the appointment of sub-agents, the delegation of the authority or the substitution of another in the place of the agent named; and formal powers of attorney quite frequently expressly confer 'full power of substitution and revocation', and in terms confirm whatever the attorney named 'or his substitutes' may lawfully do in the premises."

The general rule is, also as will be seen, subject to be modified by the peculiar circumstances and necessities of each particular case, from which or from the usage of trade, a power to delegate the authority may be inferred; but in the absence of such express authority or such circumstances the general rule is fixed, imperative and inflexible, resting upon ample foundation and constantly enforced by the courts."

"The same rule applies to a servant as to an agent. That is to say, a servant ordinarily has no implied power to get someone else to do the work or to employ co-servants, sub-servants, or assistant servants, on his master's account."

"The rule, however, is ordinarily one for the protection of the principal only, and if he is satisfied with the performance third persons cannot object."

"It must also be kept in mind that there is no delegation where the act is so done in the presence and by the direction or consent of a party as to constitute in law his own act."

Mechem on Agency, Vol. 1., paragraphs 305 and 306, page 224.

The general rule as expressed above admits of a number of exceptions. For example, when the employment of such agents is justified by usage or course of trade, in which case the principal is pre-

sumed to have assented to a known or established usage or course of dealing. In contractis tacite insunt quae sunt moris et consuetudinis, Ibid. par. 318.

And when necessity or sudden emergency justifies the employment of a sub-agent:

"When necessity or sudden emergency justifies it:—So there may be cases in which supervening necessity or sudden emergency may justify the employment of sub-agents. Thus, for example, if a railroad train in transit should suddenly be deprived of its fireman or brakeman, the authority of the conductor to employ someone else to fill the place until the necessity was past or the company could act, would doubtless be sustained, and so it would doubtless be where the conductor himself was incapacitated and he delegated to another servant or even to a competent stranger the control of the train until the exigency was past or his company could act. In England it is held that the power cannot exist if the circumstances are such that the principal may be communicated with and his instructions procured. 'The impossibility of communicating with the principal', said Smith, L. J., 'is the foundation of the doctrine of an agent of necessity."
Ibid, par. 320.

Edwards was a competent driver. He was in the automobile business and had driven a car for a number of years, consequently, we are not considering the question whether an agent in permitting an incompetent person to drive his employer's automobile would be guilty of negligence for which his employer would be responsible.

Counsel cites the case of Slothower vs. Clark, 198 Mo. App. 179, 179 S. W. p. 55, and the case of Geiss vs. Twin City Taxicab Co., 120 Minn. 368, 139 N. W. 611. These cases are in point but with all due respect we cannot follow them. In the last cited case, the court uses the following language:

"We have no disposition to question the soundness of the rule that under the doctrine of respondant superior, a master is not, generally speaking, responsible for the negligence of another, not his servant, or the application of this doctrine to a case where the negligent act is done by one without authority, employed by the agent to assist him, and not done in the presence of the servant and with his consent. But where the servant is present and consents, and consents to the performance of the act by the assistant in a negligent manner, we think the negligence is that of the servant, and that the master is responsible."

What is meant by the agent consenting to the performance of the act by the assistant in a negligent manner, we are at a loss to understand. Certainly it cannot mean that the agent consented to the negligence of the assistant. Be that as it may, the case seems to turn on the presence of the agent, a condition which does not appear to us as a determinative factor.

The remaining question is hardly worth consideration since it has been repeatedly held that mere ownership of an automobile is not sufficient to establish liability for its negligent operation.

There was a time perhaps when automobiles were regarded as ferae naturae. The man on the street or on the road regarded them as a dangerous toy of the predatory rich and this sentiment was reflected in the courts, whose decisions indicated a disposition to hold the owners responsible as possessors of dangerous instruments. Now, "everybody has an automobile and every nigger a Ford", and the situation is different as humorously pointed out in Martin vs. Lilli, 121 N. E., 423:

"At first the courts, like horses, seemed to be afraid of automobiles and were inclined to stretch the rule of respondeat superior and to hold the owner liable on one pretext or another, whether the driver was acting for the owner or not. This departure from the reasonable and practicable rule that the principal shall respond in damages for torts of his agent only when the agent is acting for the principal

soon led to absurdities and injustice. The courts have been sitting up nights writing volumes to get back to the correct rule. Witness: Hays vs. Hogan, 200 S. W. 286, and cases therein cited, discussed, distinguished, analyzed and overruled. If the reader is not surfeited when he has examined this authority, then see Reilly vs. Connable, 214 N. Y., 586; Luckett vs. Reigard, et al., 248 Pa. St., 24; Smith vs. Burns, et al., 71 Ore. 133."

See also Morullo vs. Pasteur, 144 La., 926, 81 South. 403; Jung vs. New Orleans Railway and Light Co:, 145 La. 727, 82 South. 870; Aitkins vs. Points, 148 La. 948, 88 South. 231; Rusha vs. Coyle, 149 La. 731, 90 South. 144.

From the last cited case we quote the following:

"The only proposition of law, and it is indeed a simple proposition, for which our decision of this case may be regarded as authority, is that the owner of an automobile is not liable for damages resulting from the negligence of someone else in the operation of the car, without proof or reasonable presumption that the person who operated the car was employed or authorized by the owner to operate the car."

We conclude that the defendant, A. Baldwin & Co., cannot be held responsible to plaintiff for his injuries under the circumstances and the case as to this defendant, must be dismissed.

As to the question of quantum, we are not inclined to disturb the finding of the lower court. Cusimano vs. Spiess Sales Co., 153 La. 551, 96 South. 118.

For the reasons assigned, the judgment appealed from is reversed insofar as it condemns the defendant, A. Baldwin & Co., Ltd., as to which defendant it is now ordered that there be judgment in its favor, dismissing plaintiff's demand.

In all other respects, the judgment appealed from is affirmed.